# Exhibit 5

USDA
OALJ/OHC

2016 JUL -8 AM 11: 47

UNITED STATES DEPARTMENT OF AGRICULTURE

BEFORE THE SECRETARY OF AGRICULTURE

RECEIVED

In re:                                          )        AWA Docket 16-0 *124*
                                                )                   *16-0125*
TIMOTHY L. STARK, an individual; and    )
WILDLIFE IN NEED AND WILDLIFE IN )
DEED, INC., an Indiana corporation,     )
                                                )
            Respondents                         )        COMPLAINT

There is reason to believe that the respondents named herein have willfully violated the

Animal Welfare Act, as amended (7 U.S.C. § 2131 et seq.)(AWA or Act), and the regulations

issued thereunder (9 C.F.R. Part 2)(Regulations). Therefore, the Administrator of the Animal and

Plant Health Inspection Service (APHIS) issues this complaint alleging the following:

## JURISDICTIONAL ALLEGATIONS

1.     Respondent Timothy L. Stark (Stark) is an individual whose business address is

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ At all times mentioned herein, respondent

Stark was an exhibitor as that term is defined in the Act and the Regulations and held AWA license

32-C-0204 as an "individual." Respondent Stark, together with Wildlife In Need and Wildlife In

Deed, Inc., operated a zoo at the Charlestown, Indiana address.

2.     Respondent Wildlife In Need and Wildlife In Deed, Inc. (Wildlife, Inc.), is an

Indiana corporation (1999081064) whose agent for service of process and president is respondent

Timothy L. Stark, 3320 Jack Teeple Road, Charlestown, Indiana 47111. Respondent Stark's

wife, Melisa D. Stark, is the secretary and treasurer of respondent Wildlife, Inc. At all times

mentioned herein, Wildlife, Inc., was an exhibitor, as that term is defined in the Act and the

Regulations and together with respondent Stark operated a zoo at the Charlestown, Indiana,

address. Respondent Wildlife, Inc., is registered as a 501(c)(3) not-for-profit corporation, and has

never held any AWA license.

## ALLEGATIONS REGARDING SIZE OF BUSINESS, GRAVITY OF VIOLATIONS, GOOD FAITH AND HISTORY OF PREVIOUS VIOLATIONS

3.     Respondents operate a large business.  In 2011, respondent Stark represented to APHIS that he held 46 animals (5 non-human primates and 41 wild or exotic mammals); in 2012, he represented to APHIS that he held 43 animals (five non-human primates and 38 wild or exotic mammals); in 2013, he represented to APHIS that he held 75 animals (four dogs, two cats, and 69 wild or exotic mammals); in 2014, he represented to APHIS that he held 120 animals (one dog, two cats, and 117 wild or exotic mammals); and in 2015, he represented to APHIS that he held 124 animals (one dog, one cat, 25 non-human primates and 97 wild or exotic mammals).  On information and belief, respondents derived $569,032 from animal exhibitions in 2014.

4.     The allegations herein include the repeated failure and/or refusal to provide access to APHIS inspectors for the purpose of conducting inspections to determine compliance with the Act, the Regulations, and the standards issued under the Act (9 C.F.R. Part 3)(Standards), repeated interference with and verbal abuse of APHIS inspectors, repeated failures to handle animals carefully, including using physical abuse, and repeated failures to provide adequate veterinary care to animals.

5.     Despite having been advised on multiple occasions by APHIS of noncompliance, respondents have continued to fail to comply with the minimum requirements.  Specifically, on January 17, 2014, APHIS advised respondents not to exhibit tigers to the public in a manner that permitted direct contact between the tigers and the public.  On September 14, 2015, APHIS suspended AWA license 32-C-0204 for 21 days, pursuant to section 2149(a) of the Act. Respondents have nevertheless persisted in holding "Tiger Baby Playtime" events wherein tigers,

2

non-human primates, and other exotic animals are exhibited to the public together, without any distance or barriers, and respondents' customers are invited to have direct contact with the animals, and instructed to hit the animals if they react negatively to the public handling. Moreover, two veterinarians who have performed work for respondents aver that respondents falsified written plans of veterinary care (PVC). In one case, the veterinarian avers that the form was altered after she signed it; in the other case, the veterinarian avers that the signature on the PVC is not his, and that he never signed that PVC.

6. Respondent Stark was convicted of violating the Endangered Species Act in 2008, *United States v. Timothy L. Stark*, Case No. 4:07CR00013-001 (S.D. Ind.), and is the respondent in a pending license termination proceeding. *In re Timothy Stark*, AWA Docket No. 15-0080.

## ALLEGED VIOLATIONS

7. On or about the following dates, respondent Stark willfully violated the Act and the Regulations, 9 C.F.R. § 2.4, by interfering with, and/or verbally abusing APHIS officials in the course of carrying out their duties:

    a. June 25, 2013. During a compliance inspection, respondent Stark repeatedly used profanity, made derogatory comments about the Animal Care Inspector (ACI), and suggested that he could not understand what the ACI said because of his manner of speaking.

    b. September 24, 2013. During a compliance inspection, respondent Stark was argumentative, repeatedly used profanity, insisted several times that the APHIS inspectors needed to enter an enclosure that housed multiple tigers (and that had no shift cage or double-gate system), and over the objections of the inspectors, respondent Stark

3

opened the enclosure, left it unlocked, and entered the enclosure, leaving the inspectors inside the perimeter fence.

    c.    September 26, 2013.  During a compliance inspection exit interview, respondent Stark was argumentative with the APHIS inspectors, repeatedly used profanity, slammed his fist on the table several times, repeatedly called his attending veterinarian a "fucking lying bitch," and told the inspectors that he would go down and "fucking show her."

    d.    January 20, 2016.  When APHIS Veterinary Medical Officers (VMOs) arrived to conduct a compliance inspection, accompanied by two Indiana State Troopers, respondent Stark was argumentative, repeatedly used profanity, and at one point told the inspectors and the troopers to get "the fuck off" of his property.  Following the inspection, respondent Stark called one of the VMOs a "geriatric old fucker," and, in reference to a bear (Chloe) observed to have fresh blood on her left shoulder, told the other VMO that he was "sick and tired" of her "fucking opinions."

8.    On or about the following dates, respondents willfully violated the veterinary care Regulations as specified below:

    a.    Between October 30, 2012, and approximately December 1, 2012. Respondents failed to obtain any veterinary medical care for two juvenile female leopards who, according to respondent Stark, were suffering from metabolic bone disease.  9 C.F.R. §§ 2.40(a), 2.40(b)(2).

    b.    June 25, 2013.  Respondents failed to obtain adequate veterinary care for a juvenile female leopard, and failed to establish and maintain a program of adequate

4

veterinary care that included the availability of appropriate services and adequate guidance to personnel involved in the care and use of animals regarding euthanasia, and specifically, respondent Stark represented to APHIS inspectors that he had "euthanized" the juvenile female leopard by beating her to death with a baseball bat. 9 C.F.R. §§ 2.40(a), 2.40(b)(1), 2.40(b)(4).

c.     January 1, 2012, through September 30, 2013. Respondents failed to employ an attending veterinarian to provide adequate veterinary care to respondents' animals. 9 C.F.R. §§ 2.40(a), 2.40(a)(1).

d.     June 25, 2013. Respondents failed to obtain adequate veterinary care for a Great Pyrenees dog with a bleeding lesion on his nose, and although respondent Stark represented to the APHIS inspectors that a veterinarian had examined the dog, respondents had no documentation of any such examination. 9 C.F.R. §§ 2.40(a), 2.40(b)(2), 2.40(b)(3).

e.     On or about August 21, 2013. Respondents failed to obtain adequate veterinary care for an ocelot that died allegedly following a "caging accident," and specifically, respondents did not obtain any veterinary care for the ocelot, communicate with a veterinarian regarding the ocelot, or have a necropsy performed to determine the cause of the ocelot's death. 9 C.F.R. §§ 2.40(a), 2.40(b)(2), 2.40(b)(3).

f.     On or about August 25, 2013. Respondents failed to obtain adequate veterinary care for a serval that died allegedly without having shown any clinical signs of disease or injury, and specifically, respondents did not obtain any veterinary care for the serval, communicate with a veterinarian regarding the serval, or have a necropsy performed

5

to determine the cause of the serval's death.   9 C.F.R. §§ 2.40(a), 2.40(b)(2), 2.40(b)(3).

     g.     August 25, 2013, through September 3, 2013.   Respondents failed to obtain adequate veterinary care for a male red kangaroo allegedly acquired by respondents on August 25, 2013, and specifically, respondent Stark stated that shortly after the kangaroo arrived, he noticed that the animal's feet were swollen, and he gave it Benadryl (in an unknown dosage).   Respondents never obtained any veterinary medical care for the kangaroo.   The kangaroo died on September 3, 2013, without having received any veterinary care, and respondents did not have a necropsy performed to determine the cause of the kangaroo's death.   9 C.F.R. §§ 2.40(a), 2.40(b)(2), 2.40(b)(3).

     h.     On or about August 25, 2013.   Respondents failed to obtain adequate veterinary care for a coatimundi that died allegedly without having shown any clinical signs of disease or injury, and specifically, respondents did not obtain any veterinary care for the coatimundi, communicate with a veterinarian regarding the coatimundi, or have a necropsy performed to determine the cause of the coatimundi's death.   9 C.F.R. §§ 2.40(a), 2.40(b)(2), 2.40(b)(3).

     i.     September 24, 2013.   Respondents maintained an expired medication (Ivermectin) for use on animals. 9 C.F.R. § 2.40(b)(2).

     j.     September 24, 2013.   Respondents failed to obtain adequate veterinary care for a Great Pyrenees dog with lesions and scabs on his nose and failed to follow the recommendations of the veterinarian who had examined the dog on July 1, 2013.   9 C.F.R. §§ 2.40(a), 2.40(b)(2).

     k.     September 24, 2013.   Respondents failed to obtain adequate veterinary care

6

for a tiger (Jumba) with abnormally worn, broken and discolored canine teeth, and visible weight loss, and respondent Stark represented that respondents had never obtained veterinary care for the tiger.   9 C.F.R. §§ 2.40(a), 2.40(b)(2).

l.      October 8, 2015.  Respondents failed to obtain adequate veterinary care for a Great Dane dog that was observed to have crusted material and a thick green mucus exuding from both eyes, and the dog's eyes had not been cleaned, and the dog had not been seen by a veterinarian for this condition.   9 C.F.R. §§ 2.40(a), 2.40(b)(2).

m.      October 8, 2015.  Respondents failed to obtain adequate veterinary care for a thin Fennec fox that was observed to be lethargic and reluctant to ambulate, had a dull coat, scabby material sluffing off from inside its left ear, and a green discharge from both eyes, and the fox had not been seen by a veterinarian for these conditions.  9 C.F.R. §§ 2.40(a), 2.40(b)(2).

n.      January 20, 2016.  Respondents failed to obtain adequate veterinary care for a female brown bear (Chloe) that was observed to have an injury to her left arm, as evidenced by a significant amount of fresh blood in her fur, and respondents had not noticed the injury or obtained veterinary care for the bear.   9 C.F.R. §§ 2.40(a), 2.40(b)(2), 2.40(b)(3).

o.      On or about January 20, 2016.  Respondents failed to obtain adequate veterinary care for a red kangaroo that respondents knew was ill; the kangaroo died sometime between October 8, 2015, and the date of the inspection, without having received any veterinary care, and respondents did not have a necropsy performed to determine the cause of the kangaroo's death.  9 C.F.R. §§ 2.40(a), 2.40(b)(2), 2.40(b)(3).

7

p.      On or about January 20, 2016. Respondents failed to obtain adequate veterinary care for three otters that died sometime between October 8, 2015, and the date of the inspection, without having received any veterinary care and respondents did not have any necropsies performed to determine the cause of the otters' deaths.   9 C.F.R. §§ 2.40(a), 2.40(b)(2), 2.40(b)(3).

9.      On or about September 24, 2013, respondents willfully violated the Regulations (9 C.F.R. § 2.50(c)), by failing to identify dogs as required.

10.     On or about December 1, 2012, through June 24, 2013, respondents willfully violated the Regulations (9 C.F.R. § 2.75(b)), by failing to make, keep, and maintain records or forms that fully and correctly disclose the date of disposal of two juvenile leopards acquired by respondents on or about October 31, 2012, and specifically, (1) respondents had records showing that they had acquired two juvenile leopards (each weighing 15 pounds) on October 31, 2012; (2) between June 18, 2013, and June 20, 2013, a juvenile leopard killed at least one domestic pet cat and several pet dogs in respondents' neighborhood; (3) on June 20, 2013, a juvenile leopard (weighing approximately 48 pounds) was shot and killed by respondents' neighbors; (4) respondent Stark insisted that the juvenile leopard was not his, and that his two leopards had suffered from metabolic bone disease, and had both died within a month of their arrival at respondents' facility; and (5) respondents had no records of the disposition of either leopard, no records of any diagnosis of metabolic bone disease made by any veterinarian, and no records of any veterinary medical treatment given to either leopard for metabolic bone disease, or for any other condition.

11.     On or about June 25, 2013, respondents willfully violated the Regulations (9 C.F.R. § 2.75(b)), by failing to make, keep, and maintain records or forms that fully and correctly disclose

8

the acquisition of forty-three animals that were observed by the APHIS inspector at respondents' facility during the June 25, 2013, inspection, as follows:

    a.    There were no acquisition records for one baboon;

    b.    There were no acquisition records for one black-capped capuchin;

    c.    There were no acquisition records for one white-handed gibbon;

    d.    There were no acquisition records for two Patagonian cavies;

    e.    There were no acquisition records for one guinea pig;

    f.    There were no acquisition records for one groundhog;

    g.    There were no acquisition records for three hybrid dogs;

    h.    There were no acquisition records for ten ocelots;

    i.    There were no acquisition records for four servals;

    j.    There were no acquisition records for one African crested porcupine;

    k.    There were no acquisition records for one armadillo;

    l.    There were no acquisition records for three bobcats;

    m.    There were no acquisition records for three foxes;

    n.    There were no acquisition records for one hedgehog;

    o.    There were no acquisition records for two kinkajou;

    p.    There were no acquisition records for seven tigers; and

    q.    There were no acquisition records for one caracal.

12.    On or about June 25, 2013, respondents willfully violated the Regulations (9 C.F.R. § 2.75(b)), by failing to make, keep, and maintain records or forms that fully and correctly disclose the disposition of six animals, as follows:

9

a.    There were no disposition records for two lemurs;

b.    There were no disposition records for one kangaroo;

c.    There were no disposition records for one tayra; and

d.    There were no disposition records for two leopards.

13.    On or about September 24, 2013, respondents willfully violated the Regulations (9 C.F.R. § 2.75(a)(2)), by failing to make, keep, and maintain records or forms that fully and correctly disclose the acquisition and disposition of dogs, as required.

14.    On or about September 24, 2013, respondents willfully violated the Regulations (9 C.F.R. § 2.75(b)(1)), by failing to make, keep, and maintain records or forms that fully and correctly disclose the acquisition of four animals that were observed by the APHIS inspector at respondents' facility during the September 24, 2013, inspection, as follows:

a.    There were no acquisition records for one coatimundi;

b.    There were no acquisition records for one guinea pigs; and

c.    There were no acquisition records for two domestic pigs.

15.    On or about September 24, 2013, respondents willfully violated the Regulations (9 C.F.R. § 2.75(b)(1)), by failing to make, keep, and maintain records or forms that fully and correctly disclose the disposition of three domestic pigs.

16.    On or about May 14, 2013, and May 23, 2013, respondents failed to provide APHIS officials with access to conduct AWA inspections of their facilities, animals and records, or to make an authorized person available to accompany APHIS officials on such inspections, in willful violation of the Act and the Regulations (7 U.S.C. § 2146(a); 9 C.F.R. § 2.126).

17.    On or about June 25, 2013, respondents failed to provide APHIS officials with

10

access to conduct AWA inspections of their records, in willful violation of the Regulations (9 C.F.R. § 2.126(a)(2)), and specifically, although respondents produced a written program of veterinary care dated January 17, 2013, the veterinarian whose name appeared on that document averred that he did not sign it and had ceased to serve as respondents' attending veterinarian several years earlier.

18.    On or about January 17, 2014, respondents failed to provide APHIS officials with access to conduct a compliance inspection of respondents' facilities and animals during one of respondents' "tiger baby playtime" exhibitions to the public, in willful violation of the Act and the Regulations (7 U.S.C. § 2146(a); 9 C.F.R. § 2.126).

19.    On or about the following dates, respondents willfully violated the handling Regulations (9 C.F.R. § 2.131):

     a.    December 1, 2012.  Respondents failed to handle a juvenile female leopard as carefully as possible in a manner that does not cause trauma, behavioral stress, physical harm, or unnecessary discomfort, and specifically, during a compliance inspection on June 25, 2013, respondent Stark represented to APHIS inspectors that he had "euthanized" the juvenile female leopard by beating her to death with a baseball bat.  9 C.F.R. §§ 2.131(b)(1).

     b.    January 10, 2014.  Respondents failed to handle juvenile tigers as carefully as possible in a manner that does not cause trauma, behavioral stress, physical harm, or unnecessary discomfort, during a "tiger baby playtime."  9 C.F.R. § 2.131(b)(1).

     c.    January 10, 2014.  Respondents failed to handle juvenile tigers, during exhibition, with minimal risk of harm to the animals and the public, and specifically, respondents exhibited the tigers without any distance or barriers between the animals and

11

the public and a member of the public was injured by one of the tigers. 9 C.F.R. § 2.131(c)(1).

d.    January 10, 2014.    Respondents exposed juvenile tigers to rough or excessive public handling.    9 C.F.R. § 2.131(c)(3).

e.    January 14, 2014.    Respondents failed to handle a juvenile tiger, a juvenile kangaroo, a sloth, and two lemurs as carefully as possible in a manner that does not cause trauma, behavioral stress, physical harm, or unnecessary discomfort, during a "tiger baby playtime."    9 C.F.R. § 2.131(b)(1).

f.    January 14, 2014.    Respondents used physical abuse to handle juvenile tigers, and specifically, during exhibition, respondent Stark slapped juvenile tigers who bit customer's clothing.    9 C.F.R. § 2.131(b)(2)(i).

g.    January 14, 2014.    Respondents failed to handle juvenile tigers and a juvenile kangaroo, during exhibition, with minimal risk of harm to the animals and the public, and specifically, respondents exhibited the tigers and the kangaroo without any distance or barriers between the animals and the public.    9 C.F.R. § 2.131(c)(1).

h.    January 14, 2014.    Respondents exposed juvenile tigers and a juvenile kangaroo to rough or excessive public handling.    9 C.F.R. § 2.131(c)(3).

i.    January 15, 2014.    Respondents failed to handle three juvenile tigers as carefully as possible in a manner that does not cause trauma, behavioral stress, physical harm, or unnecessary discomfort, during a "tiger baby playtime."    9 C.F.R. § 2.131(b)(1).

j.    January 15, 2014.    Respondents failed to handle three juvenile tigers, during exhibition, with minimal risk of harm to the animals and the public, and specifically,

12

respondents exhibited the tigers without any distance or barriers between the animals and the public, and, two members of the public were injured by tigers.   9 C.F.R. § 2.131(c)(1).

k.      January 15, 2014.  Respondents exposed three juvenile tigers to rough or excessive public handling.   9 C.F.R. § 2.131(c)(3).

l.      January 17, 2014.  Respondents failed to handle juvenile tigers as carefully as possible in a manner that does not cause trauma, behavioral stress, physical harm, or unnecessary discomfort, during a "tiger baby playtime."   9 C.F.R. § 2.131(b)(1).

m.      January 17, 2014.  Respondents failed to handle juvenile tigers, during exhibition, with minimal risk of harm to the animals and the public, and specifically, respondents exhibited the tigers without any distance or barriers between the animals and the public.   9 C.F.R. § 2.131(c)(1).

n.      January 17, 2014.   Respondents exposed juvenile tigers to rough or excessive public handling.   9 C.F.R. § 2.131(c)(3).

o.      August 19, 2014.  Respondents failed to handle two juvenile tigers, a coatimundi, three nonhuman primates, a kangaroo, and a lemur as carefully as possible in a manner that does not cause trauma, behavioral stress, physical harm, or unnecessary discomfort.   9 C.F.R. § 2.131(b)(1).

p.      August 19, 2014.  Respondents used physical abuse to handle two juvenile tigers, and five nonhuman primates (two lemurs, a macaque, a capuchin, and a vervet).   9 C.F.R. § 2.131(b)(2)(i).

q.      August 19, 2014.  Respondents failed to handle two juvenile tigers, during exhibition, with minimal risk of harm to the animals and the public, and specifically,

13

respondents exhibited the tigers without any distance or barriers between the animals and the public, and three members of the public were scratched or bitten by the tigers. 9 C.F.R. § 2.131(c)(1).

r.      August 19, 2014. Respondents failed to handle five nonhuman primates (two lemurs, a macaque, a capuchin, and a vervet), a kangaroo, and a coatimundi, during exhibition, with minimal risk of harm to the animals and the public, and specifically, respondents exhibited these animals without any distance or barriers between the animals and the public, and, *inter alia*, respondent Stark was observed to swing a capuchin monkey around by its tail, to swing a macaque by a belt around its hips, and to swing a nonhuman primate around by a belt, and then to toss the primate onto the lap of one of respondents' customers. 9 C.F.R. § 2.131(c)(1).

s.      August 19, 2014. Respondents exposed two juvenile tigers to rough or excessive public handling.  9 C.F.R. § 2.131(c)(3).

t.      August 19, 2014. Respondents exhibited two juvenile tigers, a coatimundi, two nonhuman primates, a kangaroo, and a lemur for periods of time and under conditions that were inconsistent with the tigers' good health and well-being.  9 C.F.R. § 2.131(d)(1).

u.      September 13, 2015. Respondents failed to handle four juvenile tigers and one juvenile capuchin monkey as carefully as possible in a manner that does not cause trauma, behavioral stress, physical harm, or unnecessary discomfort, during a "tiger playtime" exhibit.  9 C.F.R. § 2.131(b)(1).

v.      September 13, 2015. Respondents used physical abuse to handle juvenile tigers, and specifically, during exhibition, respondents' personnel repeatedly hit the juvenile

14

tigers' faces with riding crops. 9 C.F.R. § 2.131(b)(2)(i).

w.      September 13, 2015. Respondents failed to handle four juvenile tigers, during exhibition, with minimal risk of harm to the animals and the public, and specifically, respondents exhibited the tigers to groups of approximately 30 people, without any distance or barriers between the tigers and the public, and multiple persons were scratched and/or bitten, and the juvenile tigers were repeatedly hit with riding crops. 9 C.F.R. § 2.131(c)(1).

x.      September 13, 2015. Respondents failed to handle one juvenile capuchin monkey, during exhibition, with minimal risk of harm to the animal and the public, and specifically, respondents exhibited the capuchin to groups of approximately 30 people, without any distance or barriers between the nonhuman primate and the public, exposing both the animal and the public to harm. 9 C.F.R. § 2.131(c)(1).

y.      September 13, 2015. Respondents exhibited four juvenile tigers in successive "playtime" and photo sessions without providing them an adequate rest period. 9 C.F.R. § 2.131(c)(3).

z.      September 13, 2015. Respondents exposed multiple young or immature animals to rough or excessive public handling. 9 C.F.R. § 2.131(c)(3).

aa.     September 13, 2015. Respondents exhibited four juvenile tigers and a juvenile capuchin monkey for periods of time and under conditions that were inconsistent with the animals' good health and well-being. 9 C.F.R. § 2.131(d)(1).

20.     On or about February 29, 2012, respondents willfully violated the Regulations, 9 C.F.R. § 2.100(a), by failing to meet the Standards, and specifically, respondents housed six tigers and one lion in enclosures that were not constructed of such material and strength as appropriate,

15

and in a manner that would contain the animals.  9 C.F.R. § 3.125.

21.     On or about June 25, 2013, respondents willfully violated the Regulations, 9 C.F.R.
§ 2.100(a), by failing to meet the Standards, as follows:

    a.     Respondents failed to develop, document, and follow an appropriate plan
for environmental enhancement to promote the psychological well-being of nonhuman
primates, in accordance with currently-accepted professional standards, and made
available to APHIS upon request. 9 C.F.R. § 3.81.

    b.     Respondents housed seven tigers (Hemi, Leesha, Avalanche, Hurricane,
Taima, Nahandi, and Glacier) and one lion (Ungowa) in enclosures that were not
constructed of such material and strength as appropriate for those species, and in a manner
that would contain those animals.   9 C.F.R. § 3.125(a).

    c.     Respondents housed multiple tigers in facilities that were not enclosed by a
perimeter fence of sufficient height and structural strength to protect the tigers from injury,
function as a secondary containment system, and prevent the animals from physical contact
with persons or other animals outside the fence. 9 C.F.R. § 3.127(d).

    d.     Respondents fed large carnivores a diet that was not prepared with
consideration for the age, species, condition, size, and type of animals.  9 C.F.R. § 3.129(a).

22.     On or about September 24, 2013, respondents willfully violated the Regulations, 9
C.F.R. § 2.100(a), by failing to meet the Standards, as follows:

    a.     Respondents failed to store supplies of food for dogs in facilities that
adequately protect the supplies of food from deterioration, molding, or contamination by
vermin. 9 C.F.R. § 3.1(e).

16

b.     Respondents housed three hybrid dogs in enclosures with surfaces that were not impervious to moisture. 9 C.F.R. § 3.3(e)(1).

c.     Respondents failed to develop, document, and follow an appropriate plan for exercise for dogs, as required. 9 C.F.R. § 3.8.

d.     Respondents failed to clean and sanitize food receptacles for three hybrid dogs as required.   9 C.F.R. § 3.9.

e.     Respondents failed to sanitize used primary enclosures for three hybrid dogs as required.   9 C.F.R. § 3.11(b)(2).

f.     Respondents failed to develop, document, and follow an appropriate plan for environmental enhancement to promote the psychological well-being of nonhuman primates, in accordance with currently-accepted professional standards, and made available to APHIS upon request. 9 C.F.R. § 3.81.

g.     Respondents housed seven tigers (Hemi, Leesha, Avalanche, Hurricane, Taima, Nahandi, and Glacier) and one lion (Ungowa) in enclosures that were not constructed of such material and strength as appropriate for those species, and in a manner that would contain those animals.   9 C.F.R. § 3.125(a).

h.     Respondents housed four tigers (Leesha, Avalanche, Hurricane, and Taima) in an enclosure with a resting platform placed close to the side of the enclosure such that it could provide a means for the tigers to escape.   9 C.F.R. § 3.125(a).

i.     Respondents failed to store supplies of food in facilities that adequately protect the supplies of food from deterioration, molding, or contamination by vermin. 9 C.F.R. § 3.125(c).

17

j.     Respondents housed multiple tigers in facilities that were not enclosed by a perimeter fence to protect the tigers from injury, function as a secondary containment system, and prevent the animals from physical contact with persons or other animals outside the fence, and specifically, there was a 3-to-6-inch gap between one of the gates and the fence. 9 C.F.R. § 3.127(d).

k.     Respondents housed a lion, two tigers, one leopard, and four bears in facilities that were not enclosed by a perimeter fence of sufficient height and structural strength to protect these animals from injury, function as a secondary containment system, and prevent the animals from physical contact with persons or other animals outside the fence. 9 C.F.R. § 3.127(d).

l.     Respondents failed to provide animals a diet that was wholesome, palatable, and free from contamination and prepared with consideration for the age, species, condition, size, and type of animals.   9 C.F.R. § 3.129.

m.     Respondents failed to provide potable water to bears.   9 C.F.R. § 3.130.

n.     Respondents failed to provide potable water to the tigers housed in pens 1, 2, 4, 5.   9 C.F.R. § 3.130.

o.     Respondents failed to provide potable water to a lion (Chief).   9 C.F.R. § 3.130.

p.     Respondents failed to employ a sufficient number of adequately trained employees.   9 C.F.R. § 3.132.

23.     On or about May 6, 2014, respondents willfully violated the Regulations, 9 C.F.R. § 2.100(a), by failing to meet the Standards, as follows:

18

a.      Respondents housed three dogs in enclosures with surfaces that were not impervious to moisture. 9 C.F.R. § 3.3(e)(1).

b.      Respondents failed to provide potable water to a dog.   9 C.F.R. § 3.10.

c.      Respondents failed to clean and sanitize two enclosures housing five hybrid dogs as required.   9 C.F.R. § 3.11(b)(2).

d.      Respondents housed four tigers (Jomba, BaBuVa, Nahandi, and Glacier) and two lions (Ungowa and Chief) in enclosures that were not constructed of such material and strength as appropriate for those species, and in a manner that would contain those animals. 9 C.F.R. § 3.125(a).

e.      Respondents housed four bears in an enclosure with a wooden walkway that was in disrepair, and there were broken pieces of wood with exposed nails inside the bear enclosure.   9 C.F.R. § 3.125(a).

f.      Respondents housed a tiger in an enclosure (#4) with a wooden spool that had collapsed, leaving broken pieces of wood and exposed nails.   9 C.F.R. § 3.125(a).

g.      Respondents housed a tiger in an enclosure (#1) that contained logs with exposed nails.   9 C.F.R. § 3.125(a).

h.      Respondents housed twelve animals (eight foxes, one cougar, and three porcupines) in enclosures that did not provide them with adequate shade. 9 C.F.R. § 3.127(a).

i.      Respondents failed to provide potable water to multiple tigers, four bears, one cougar, and one lion.   9 C.F.R. § 3.130.

24.      On or about August 20, 2014, respondents willfully violated the Regulations, 9

19

C.F.R. § 2.100(a), by failing to meet the Standards, as follows:

     a.     Respondents housed three dogs in enclosures with surfaces that were not impervious to moisture. 9 C.F.R. § 3.3(e)(1).

     b.     Respondents failed to provide potable water to a dog. 9 C.F.R. § 3.10.

     c.     Respondents failed to clean and sanitize two enclosures housing five hybrid dogs as required. 9 C.F.R. § 3.11(b)(2).

     d.     Respondents housed four tigers (Jomba, BaBuVa, Nahandi, and Glacier) and two lions (Ungowa and Chief) in enclosures that were not constructed of such material and strength as appropriate for those species, and in a manner that would contain those animals. 9 C.F.R. § 3.125(a).

     e.     Respondents housed four bears in an enclosure with a wooden walkway that was in disrepair, and there were broken pieces of wood with exposed nails inside the bear enclosure. 9 C.F.R. § 3.125(a).

     f.     Respondents failed to provide potable water to multiple tigers, four bears, two cougars, and one lion. 9 C.F.R. § 3.130.

25.     On or about July 27, 2015, respondents willfully violated the Regulations, 9 C.F.R. § 2.100(a), by failing to meet the Standards, as follows:

     a.     Respondents housed a dog (Bandit) in an enclosure that contained sheets of unused siding adjacent to the shelter structure. 9 C.F.R. § 3.1(a).

     b.     Respondents failed to keep the water receptacle for a dog (Bandit) clean and sanitized. 9 C.F.R. § 3.10.

     c.     Respondents housed two tigers (Nahandi and Glacier) and two lions

(Ungowa and Chief) in enclosures that were not constructed of such material and strength as appropriate for those species, and in a manner that would contain those animals. 9 C.F.R. § 3.125(a).

d.      Respondents housed two hyenas in an enclosure that had broken wires protruding into the enclosure and accessible to the hyenas.   9 C.F.R. § 3.125(a).

e.      Respondents housed a lion (Chief) in an enclosure that contained sheets of unused siding adjacent to the shelter structure.   9 C.F.R. § 3.125(a).

f.      Respondents failed to keep the water receptacle for a lion (Chief) clean and sanitized.   9 C.F.R. § 3.130.

g.      Respondents failed to provide juvenile tigers a diet that was wholesome, palatable, and free from contamination and prepared with consideration for the age, species, condition, size, and type of animals.   9 C.F.R. § 3.129.

26.     On or about October 8, 2015, respondents willfully violated the Regulations, 9 C.F.R. § 2.100(a), by failing to meet the Standards, as follows:

a.      Respondents housed two dogs in an enclosure that contained a shelter in disrepair, with exposed nails and detached wood.   9 C.F.R. § 3.1(a).

b.      Respondents housed two Terrier dogs in enclosures with surfaces that were not impervious to moisture. 9 C.F.R. § 3.3(e)(1).

c.      Respondents housed two dogs (a Great Dane and a Mastiff) in an enclosure that did not provide the dogs with adequate shelter from the sun.   9 C.F.R. § 3.4(b)(2).

d.      Respondents housed three ring-tailed lemurs in an enclosure that did not provide them with easy and convenient access to food and water.   9 C.F.R. §

21

3.80(a)(2)(viii).

e.       Respondents housed two tigers (Nahandi and Glacier) and two lions (identified as Ungowa and Chief) in enclosures that were not constructed of such material and strength as appropriate for those species, and in a manner that would contain those animals.  9 C.F.R. § 3.125(a).

f.       Respondents housed a tiger in an enclosure (#2) containing a platform that was in disrepair, with numerous protruding nails accessible to the tiger. 9 C.F.R. § 3.125(a).

g.       Respondents housed four tigers in an enclosure (#4) containing a shelter that was in disrepair, with portions of tin detached from the wall.  9 C.F.R. § 3.125(a).

h.       Respondents housed two hyenas in an enclosure that was in disrepair, with sections of detached fencing exposing wires that protruded into the enclosure.  9 C.F.R. § 3.125(a).

i.       Respondents housed a cougar in an enclosure containing a shelter that was in disrepair and open to the elements.  9 C.F.R. § 3.125(a).

j.       Respondents housed multiple tigers in enclosures (## 1, 2, 3, 4, 5, and 6) that contained excessive amounts of food waste.  9 C.F.R. § 3.125(a).

k.       Respondents housed a cougar in an enclosure that contained a buildup of feces.  9 C.F.R. § 3.125(a).

l.       Respondents housed animals in facilities that were not enclosed by a perimeter fence of sufficient height and structural strength to protect these animals from injury, function as a secondary containment system, and prevent the animals from physical contact with persons or other animals outside the fence. 9 C.F.R. § 3.127(d).

22

27. On or about January 20, 2016, respondents willfully violated the Regulations, 9 C.F.R. § 2.100(a), by failing to meet the Standards, as follows:

a. Respondents housed a hybrid dog in an enclosure that contained a shelter in disrepair, with exposed nails and detached wood.  9 C.F.R. §§ 3.1(a), 3.1(c)(1)(ii).

b. Respondents housed a hybrid dog in an enclosure that contained a shelter that did not protect the dog from the elements.  9 C.F.R. § 3.4(b).

c. Respondents housed a dog (Bandit) in an enclosure that contained a shelter that did not contain adequate bedding to protect the dog from the cold.  9 C.F.R. § 3.4(b)(4).

d. Respondents housed three tigers (Glacier, Tacova and Jamba) and two lions (identified as Ungowa and Chief) in enclosures that were not constructed of such material and strength as appropriate for those species, and in a manner that would contain those animals.  9 C.F.R. § 3.125(a).

e. Respondents housed two hyenas in an enclosure that was in disrepair, with sections of detached fencing exposing wires that protruded into the enclosure.  9 C.F.R. § 3.125(a).

f. Respondents housed a coyote in an enclosure that contained a shelter in disrepair, with exposed nails and detached wood.  9 C.F.R. §§ 3.125(a).

g. Respondents housed a coyote in an enclosure containing a shelter that was open to the elements.  9 C.F.R. § 3.127(b).

h. Respondents housed three wolves in an enclosure containing a single shelter that was not adequate to accommodate all three wolves.  9 C.F.R. § 3.127(b).

23

i.     Respondents housed a lion (Ungowa) and a tiger (Glacier) in an enclosure that did not provide adequate shelter from the elements for both animals.  9 C.F.R. § 3.127(b).

WHEREFORE, it is hereby ordered that for the purpose of determining whether the respondents have in fact willfully violated the Act and the Regulations issued under the Act, this complaint shall be served upon the respondents.  The respondents shall file an answer with the Hearing Clerk, United States Department of Agriculture, Washington, D.C. 20250-9200, in accordance with the Rules of Practice governing proceedings under the Act (7 C.F.R. § 1.130 et seq.).  Failure to file a timely answer shall constitute an admission of all the material allegations of this complaint.  APHIS requests that this matter proceed expeditiously in conformity with the Rules of Practice governing proceedings under the Act; and that such order or orders be issued as are authorized by the Act and warranted under the circumstances.

Done at Washington, D.C.
this 7 day of July 2016

Kevin Shea
Administrator
Animal and Plant Health Inspection Service

COLLEEN A. CARROLL
Attorney for Complainant
Office of the General Counsel
United States Department of Agriculture
1400 Independence Avenue, S.W.
Room 2014 South Building
Washington, D.C.  20250-1400
Telephone (202) 720-6430; 202-690-4299 (Fax)
e-mail: colleen.carroll@ogc.usda.gov

24